## Eldredge's Estate

Before Van Dusen, Stearne, Sinkler, Klein, and Bok, JJ.

*John A. Mawhinney, Charles S. Edmunds* and *William N. Ottinger*, for exceptants.

*Joseph Smith, David Rosen* and *Charles Drummond*, contra.

VAN DUSEN, J., January 22, 1937.—By his will, testator gave his estate in trust to pay the income to his three children, John, George and Ida, during their lives, and upon their deaths directed that the whole of the estate should be equally divided between his grandchildren, if any, born after the date of the will, and to their issue per capita. At that time, John had a child, George had a child, and Ida was unmarried.

By a codicil executed before any more grandchildren were born, he directed that the principal of Ida's share might be expended on her by the trustee, and after her death he gave the balance of the principal of this share among the children of John and George per stirpes. He did not make any distinction in this codicil between grandchildren born before the date of his will and those born afterward, and we agree with the auditing judge that the

principal of one third is to be divided according to a literal reading of the codicil, unless a further change was effected by the fourth codicil.

The fourth codicil was made after another child had been born to testator's son George, whose name also was George. This codicil provides:

"I revoke that part of my will which gives my son George Horn Eldredge or his wife any interest in my estate or the income thereof and direct that my executors pay him the sum of Five dollars ($5.00) which I desire shall be his full interest therein.

"The income will then be divided equally between John Marshall Eldredge and Ida May Eldredge, and at their death, if they die without issue, the principal and residue shall be divided equally between the children of my brothers Frank, James, Charles and William Eldredge and the children of my sisters Eliza, Emma and Harriet. I also desire that George Eldredge, my grandchild, shall share equally therein."

Later, George had another child born to him, Eloise. John had no more children, and Ida never married and had no children. Both John and Ida, the life tenants, are dead.

The first paragraph of this codicil disposes of George's interest, which was in income. If the second paragraph is read literally it disposes of principal only in case Ida and John leave no issue; and as John left issue it does not apply, and the will and second codicil remain unchanged.

It is argued that this is an unreasonable result, for John's child, having been born before the date of the will, takes nothing under it. Why should the existence of one who is a stranger to the distribution of the shares of John and George change the course of inheritance of those shares?

Various conjectures can be made as to testator's meaning.

It may be that this fourth codicil was intended to dispose of George's share of principal only, in spite of the generality of the language: "the principal and residue". If so, John's share would go under the will.

It may be that testator thought that by the first paragraph of the codicil he had cut out George's issue; and that in the second paragraph he was stating his recollection and understanding of what would follow under the will as the result of doing so (the opening phrase suggests this) without intending to make any change except to put in the class with the children of brothers and sisters the little George who had just been born, and was not yet able to offend him. If so, it is necessary to read "die without issue" as meaning "die without issue born after the date of the will."

Exceptants, who are the children of brothers and sisters, cite Sullivan v. Straus, 161 Pa. 145, which holds that a clause in a will excluding a son was to be read into a residuary clause which gave to children generally. A will reflects one state of testator's mind, and it is to be supposed that all of its provisions are to the same purpose. A codicil represents another state of mind. It is intended to make a change. General language in a codicil, therefore, omitting limitations and exclusions which are in the will, may be intentional. This is so even though the codicil effects other undoubted changes. Testator may have had the exclusion of afterborn children so firmly in his mind when he wrote the second and fourth codicils that he forgot to say so. But this is only a conjecture, and we cannot act on that: Packer's Estate (No. 2), 291 Pa. 198.

We must either read the fourth codicil literally, as the auditing judge did, or say that it is not understandable and cannot be reformed. Either attitude drives us back to the will for the disposition of John's and George's shares, and Ida's share goes under the second codicil.

The exceptions are dismissed and the adjudication is confirmed absolutely.